**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 309
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
***Counsel for Plaintiff and the Proposed***
***Class***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONOVAN MARSHALL, on behalf of himself, all others similarly situated, and the general public,<br><br>                    Plaintiff,<br><br>          v.<br><br>DANONE US, INC.,<br><br>                    Defendant. | Case No:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; CAL. CIV. CODE §§ 1750 *et seq.*; and BREACH OF EXPRESS & IMPLIED WARRANTIES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Donovan Marshall, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant, Danone US, Inc. ("Danone"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1.    Reliable and compelling scientific studies demonstrate that the oil or fat from coconuts, which is almost 90 percent saturated fat, detrimentally affects the body's cardiovascular system, increasing risk of heart disease—the number one cause of death in the United States. The American Heart Association recently warned that "because coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and has no known offsetting favorable effects, we advise against the use of coconut oil."[1]

2.    Despite the compelling evidence of the harmful effects of coconut oil on cholesterol levels and cardiovascular health, Danone misleadingly labels Silk Coconutmilk (the Product"), which is primarily coconut oil and water, with claims that it is cholesterol free. Because cholesterol free claims are likely to mislead consumers to believe that products bearing such statements won't detriment their cholesterol levels or cardiovascular health, the FDA specifically prohibits such labeling representations on products—like Silk Coconutmilk—that are high in saturated fat.

3.    Plaintiff, who was deceived into purchasing the Product, brings this action challenging Defendant's deceptive claims on behalf of himself and all other similarly situated consumers in California, alleging violations of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*, "CLRA"), Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*, "UCL"), and False Advertising Law (id. § 17500, *et seq.*, "FAL"), as well as breaches of express and implied warranties.

---

[1] American Heart Association, *Dietary Fats and Cardiovascular Disease: A Presidential Advisory From the American Heart Association*, Circulation (June 15, 2017), available at http://circ.ahajournals.org/content/early/2017/06/15/CIR.0000000000000510.

1    4.    Plaintiff primarily seeks an order compelling Defendant to cease marketing the

2    Product using deceptive claims.

3                                    **PARTIES**

4    5.    Plaintiff Donovan Marshall is a resident of San Francisco County and a citizen

5    of California.

6    6.    Defendant Danone US, Inc. is a Delaware Corporation, with its principal place

7    of business in White Plains, New York. Danone markets, distributes, and sells the Silk

8    Coconutmilk Product.

9                            **JURISDICTION & VENUE**

10    7.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2)

11    (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value

12    of $5,000,000, exclusive of interest and costs and at least one member of the class of plaintiffs

13    is a citizen of a State different from Defendant. In addition, more than two-thirds of the

14    members of the class reside in states other than the state in which Defendant is a citizen and

15    in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. §

16    1332(d) do not apply.

17    8.    The Court has personal jurisdiction over Danone because it has purposely

18    availed itself of the benefits and privileges of conducting business activities within California,

19    specifically, by intentionally distributing, marketing, and selling the Product in California.

20    9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff

21    resides in and suffered injuries as a result of Defendant's acts in this District. Thus, many of

22    the acts and transactions giving rise to this action occurred in this District. Further, Defendant

23    is subject to personal jurisdiction in this District.

24                            **INTRADISTRICT ASSIGNMENT**

25    10.    This civil action arises out of the acts and omissions of Defendant, which

26    occurred in San Francisco County. Pursuant to Civil Local Rule 3-2(c), (d), this action is

27    correctly assigned to the San Francisco or Oakland Division.

28

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

**FACTS**

**I.     The Composition of the Silk Coconutmilk Product**

11.     Silk Coconutmilk is primarily an emulsion of coconut oil suspended in water (coconut cream), made through an process where the coconut meat ("copra") is pressed to "release" the oil from the meat. During the Class Period, the Product was sold in Original, Unsweetened, and Vanilla flavors.

12.     According to the Nutrition Facts box of the Product, during the Class Period, the Product contained at least 3 grams of saturated fat per serving. *See* Appendix 1 (with exemplars of the Product's labeling).

13.     As demonstrated by the studies cited below, consuming Silk Coconutmilk, which is basically saturated fat is unhealthy as it increases risk of CHD, stroke, and other morbidity.

**II.     Because of its High Saturated Fat Content, Silk Coconutmilk Detrimentally Impacts Health, and Increases Risk of Cardiovascular Diseases and Other Morbidity**

**A.     Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity**

**1.     The Role of Cholesterol in the Human Body**

14.     Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high density lipoproteins, or HDL cholesterol.

15.     LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

16.     HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

**2.      High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke**

17.      Total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD.[2]

18.      High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[3] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

19.      This process can happen to the coronary arteries in the heart and restricts the provision of oxygen and nutrients to the heart, causing chest pain or angina.

20.      When atherosclerosis affects the coronary arteries, the condition is called coronary heart disease, or CHD.

21.      Cholesterol-rich plaques can also burst, causing a blood clot to form over the plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or debilitating heart attack or stroke.

---

[2] *See, e.g.*, Dr. Dustin Randolph, *Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke* (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), *available at* http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[3] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011) [hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

22.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[4]

### 3.     Saturated Fat Consumption Causes Increased Total and LDL Blood Cholesterol Levels, Increasing the Risk of CHD and Stroke

23.     The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol."[5]

24.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[6]

25.     This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

26.     For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[7]

27.     In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake

---

[4]     Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-for-you.html.

[5] USDA Review of the Evidence, *supra* n.3.

[6] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

[7] USDA Review of the Evidence, *supra* n.3.

of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[8]

28. Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[9]

29. For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[10]

30. In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[11]

31. Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[12]

32. For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[13]

33. The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[14] And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[15]

---

[8] IOM, Dietary Reference Intakes, *supra* n.6, at 481.

[9] *Id.* at 422.

[10] *Id.*

[11] *Id.* at 460.

[12] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

[13] USDA Review of the Evidence, *supra* n.3.

[14] *Id.*

[15] *Id.*

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

34.     In short, consuming saturated fat increases the risk of CHD and stroke.[16]

### 4.     In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Appreciable Impact on Blood Cholesterol Levels

35.     For many years, there has been a common misperception that dietary cholesterol significantly affects blood cholesterol levels and should be avoided. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[17]

36.     In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[18]

37.     In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[19]

38.     Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, *and coconut oils*)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[20]

---

[16] *See* Mendis, Coconut fat, *supra* n.12, at 583.

[17] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

[18] *Id.*

[19] *Id.* Part D, Chapter 6, at 12.

[20] *Id.* (emphasis added).

**B.** **Studies Specifically Demonstrate that Consuming Coconut Oil—the Only Source of Fat in the Product—Increases Risk of Cardiovascular Heart Disease and Other Morbidity**

39.    Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[21] several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat and the only source of fat in the Product—increases the risk of CHD and stroke.

40.    For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[22] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[23] "At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[24]

41.    In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[25] At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[26]

42.    The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et

---

[21] *See* Mendis, Coconut fat, *supra* n.12 at 583.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 586.

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[27]

43.    Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[28]

44.    Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[29]

45.    The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[30] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of fat.[31] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[32] In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75%

---

[27] *Id.* at 588.

[28] *Id.*

[29] *Id.* at 587.

[30] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

[31] *Id.*

[32] *Id.*

9

polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[33]

46.    Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

47.    A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease.[34]

48.    Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid profiles.[35] The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[36]

49.    In another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum cholesterol, LDL, and apo B."[37] Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart

---

[33] *Id.* at 715.

[34] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

[35] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J Clin. Nutr. 190, 190 (1985).

[36] *Id.*

[37] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

disease. In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[38]

50.     In short, as the American Heart Association recently and succinctly stated, "because coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and *has no known offsetting favorable effects*, we advise against the use of coconut oil" (emphasis added).[39]

## III.     The Manufacture, Marketing, and Sale of Silk Coconutmilk

51.     Silk Coconutmilk has been sold on a nationwide basis, including in California since at least 2011.

52.     According to the Silk Coconutmilk website (www.silk.com), the Product is sold at major retailers such as Ralphs, Walgreens, Albertsons, and Smart & Final, among others.

53.     During the Class Period, the Silk Coconutmilk Product was sold in 64-fluid-ounce (half gallon) containers and in three flavors, Original, Unsweetened, and Vanilla.[40]

54.     An exemplar of the Product's labeling sold during the Class Period is seen below. *See also* Appendix 1 (providing additional exemplars of the Product's labeling).

---

[38] *Id.*

[39] American Heart Association, *Dietary Fats and Cardiovascular Disease: A Presidential Advisory From the American Heart Association*, Circulation (June 15, 2017), available at http://circ.ahajournals.org/content/early/2017/06/15/CIR.0000000000000510.

[40] It appears that the Vanilla flavor is no longer sold and that it was discontinued or phased out in or around approximately 2018.

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




12




*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

55.     Except for immaterial differences, such as in the name of each flavor, it appears the labeling of each flavor is essentially identical, including as to the challenged claims. *See* Appendix 1.

**IV.     Defendant Markets Silk Coconutmilk with Misleading Health and Wellness Claims**

56.     Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. Nielsen's 2015 Global Health & Wellness Survey, for instance, found that "88% of those polled are willing to pay more for healthier foods."[41]

57.     Danone is well aware of consumer preference for healthful foods and indeed holds itself out as a leader in health foods. To increase sales volume and the Product's price, Danone employs a strategic marketing campaign intended to convince consumers that the Product is healthy or won't harm health, despite that it is almost entirely composed of unhealthy saturated fat.

58.     For example, on its website, Danone claims it is "[d]edicated to bringing health through food to as many people as possible. . . ." and "we aim to inspire healthier and more sustainable eating and drinking practices. . . ." [42]

59.     It promotes the Silk brand as a health food brand, for example, claiming "[a]t Silk, we believe that small victories are just as important as large ones, and doing something simple–like choosing a healthy breakfast or taking a walk–is a win. Silk can help you on your journey."[43]

---

[41] Nancy Gagliardi, Forbes, Consumers Want Healthy Foods--And Will Pay More For Them (Feb. 18, 2015) (citing Neilson, 2015 Global Health & Wellness Survey, at 11 (Jan. 2015)).

[42] Danone, "About Us" Page, https://www.danone.com/about-danone.html (last visited March 7, 2019).

[43] Danone, "SILK" Page, https://www.danone.com/brands/dairy-plant-based-products/silk.html (last visited March 7, 2019).

60.     On the Silk website, it states, "Silk Spells Progress [;] At Silk we think trying to eat better is enough. . . . And our passion for plant-based nutrition can help."[44]

## A.     Danone Labels Silk Coconutmilk with Misleading Health and Wellness Claims, Including misleading Cholesterol Free Claims

61.     During the Class Period, although the Product's labeling was occasionally refreshed,[45] Silk Coconutmilk bore misleading claims that it was free of cholesterol. Specifically, Silk Coconutmilk bore one of the following cholesterol free claims: "Silk Coconutmilk is free of . . . cholesterol . . . and worries", "cholesterol-free", or "Free from Cholesterol." *See* Appendix 1.

62.      These claims, taken individually and in context of the label as a whole, even if literally true, are misleading because they suggest that by the absence of cholesterol that Silk Coconutmilk is healthy and specifically will not detrimentally affect blood cholesterol levels or cardiovascular health. This is false and misleading because the Product is unhealthy and contains dangerous amounts of saturated fat, the consumption of which detrimentally affects blood cholesterol levels and causes morbidity, including heart disease and stroke.

63.     In conjunction with marketing Silk Coconutmilk with claims that convey that the Product is cholesterol free and won't detriment health, particularly cholesterol levels, Defendant intentionally omits material information regarding the dangers of consuming the Product. Defendant is under a duty to disclose this information to consumers because (a) Defendant is revealing some information about Silk Coconutmilk—enough to convey it is healthful or conducive to good physical health—without revealing additional material information—that its consumption has detrimental health effects, (b) Defendant's deceptive omissions concern human health, and specifically the detrimental health consequences of consuming Silk Coconutmilk, (c) Defendant was in a superior position to know of the dangers

---

[44] *Id*.

[45]  The label exemplars in Appendix 1 are arranged  from newest, *see* Appendix 1 at 1-2, to oldest, *see id.* at 6.

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

presented by the Product as a manufacturer of foods whose business depends upon food science and that holds itself out to be a leader in health foods, and (d) Defendant actively concealed material facts not known to Plaintiff and the Class.

64.    As described above, in marketing the Product, Defendant regularly affirmatively uses certain words and phrases to suggest Silk Coconutmilk won't harm cardiovascular health, which is misleading given the negative health consequences of consuming the Product. In light of these voluntary statements, Defendant has a duty to disclose information regarding the harmful effects of consuming the Product.

65.    In sum, the totality of the Silk Coconutmilk labeling conveys the concrete message to a reasonable consumer that the Product is healthful or at least won't detriment cardiovascular health or cholesterol levels.

66.    Defendant intended consumers to rely upon this message, which is false and misleading for the reasons stated herein. Its senior officers and directors allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## V.    The Labeling of Silk Coconutmilk Violates California and Federal Law

### A.    Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law

67.     Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food labeling requirements as its own, *see, e.g., id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto."). *See also id.* § 110665.

68.    The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

69.    Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

**B.    The Silk Coconutmilk's False and Misleading Labeling Claims Render the Product Misbranded Under California and Federal Law**

70.    Danone's deceptive statements described herein violate Cal. Health & Safety Code § 110660 and 21 U.S.C. § 343(a), which both deem a food misbranded if its labeling is "false or misleading in any particular."

71.    As described above, the Product's labeling contains cholesterol free statements that are false or misleading because they state, suggest, or imply that it is healthful and won't detriment health, which render it misbranded.

72.    In addition, the Product's labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

73.    Defendant's voluntary and affirmative misrepresentations challenged herein "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such omitted facts include the detrimental health consequences of consuming the Product.

74.    Defendant similarly failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Defendant failed to disclose the increased risk of serious chronic disease likely to result from the usual consumption of Silk Coconutmilk.

**C.    Silk Coconutmilk is Misbranded Because its Labeling Makes Unauthorized Nutrient Content Claims**

75.    The Product is misbranded because its labeling bears unauthorized nutrient content claims.

76.     Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. *See also* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

77.     Characterizing the level of a nutrient on food labels and the labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders a product misbranded under 21 U.S.C. § 343(r)(1)(A).

78.     The Silk Coconutmilk Product bears cholesterol free claims. Specifically, the labeling of the Product bears or bore one of the following cholesterol free claims: "Silk Coconutmilk is free of . . . cholesterol", "cholesterol-free", and "Free from Cholesterol."

79.     These phrases meet the definition of a nutrient content claim because they characterize the level of cholesterol in the Product, *see* 21 C.F.R. § 101.13(b), but the Silk Coconutmilk Product fails to meet the requirements for making the claim that it is cholesterol free.

80.     Under 21 C.F.R. § 101.62(d)(1), to bear the nutrient content claim "No cholesterol," "cholesterol free," and similar claims that cholesterol is absent, a food must, among other things, contain less than 2 grams of saturated fat per Reference Amount Customarily Consumed (RACC), *id*. § 101.62(d)(1)(ii)(C).

81.     According to the Product's labeling, it contains at least 3 grams of saturated fat per 1 cup serving, which is the RACC for the Product.[46] *See* Appendix 1.

82.     Accordingly, the Product does not meet the saturated fat requirement, instead containing a disqualifying amount of saturated fat, making the Product ineligible for "cholesterol free" claims under 21 C.F.R. § 101.62(d)(1)(ii), and rendering it misbranded.

---

[46] The RACC for the Product is 1 cup, which may be expressed as 240 millimeters or 8 fluid ounces. *See* 21 C.F.R. § 101.12(b), Table 2 ("Milk, milk-substitute beverages . . . .").

*See* 21 U.S.C. § 343(r)(1)(A). *See also* 21 C.F.R. § 101.62(f) ("Any label or labeling containing any statement concerning fat, fatty acids, or cholesterol that is not in conformity with this section shall be deemed to be misbranded.").

83.    Plaintiff and Class Members would not have purchased Silk Coconutmilk if they knew it was misbranded pursuant to California and federal regulations because its labeling made unauthorized and misleading nutrient content claims and omitted material information and disclosures.

**IV.    Plaintiff's Purchase, Reliance, and Injury**

84.    Mr. Marshall purchased Silk Original and Vanilla Coconutmilk periodically during the Class Period. To the best of his recollection, Mr. Marshall purchased the Product from various local grocery stores in San Francisco, like Foods Co. Mr. Marshall consumed Silk Coconutmilk after purchasing it.

85.    At the time of purchase and when deciding to purchase Silk Coconutmilk, Plaintiff read and relied on the Product's labeling claim, "cholesterol-free."

86.    Based on the representation, Plaintiff believed the Product would not detriment his cholesterol or cardiovascular health.

87.    When purchasing Silk Coconutmilk, Plaintiff was seeking a product to consume, which had the qualities described on the Product's labeling, namely, one that was healthful and that would not detriment his health such as by increasing his risk of CHD, stroke, and other morbidity.

88.    The representations on the Product's label, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the products are not healthy but instead their consumption increases the risk of CHD, stroke, and other morbidity.

89.    Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Defendant had regarding the

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

nutrients present in the Product or the effects of consuming the Product. At the time of purchase, Plaintiff was unaware that consuming Silk Coconutmilk, adversely affects blood cholesterol levels and increases risk of CHD, stroke, and other morbidity.

90.     Plaintiff acted reasonably in relying on the cholesterol claims that Danone intentionally placed on the Product's label with the intent to induce average consumers into purchasing the Product.

91.     Plaintiff would not have purchased Silk Coconutmilk if he knew that it was misbranded pursuant to California and FDA regulations in that the claims were prohibited due to its saturated fat content, that its labeling claims were false and misleading, and it omitted material information.

92.     The Product cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

93.     Plaintiff paid more for Silk Coconutmilk, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements and omissions complained of herein.

94.     For these reasons, the Product was worth less than what Plaintiff paid for it.

95.     Instead of receiving a product that had actual healthful qualities and would not detriment cholesterol levels and cardiovascular health, the Product Plaintiff received was one that is not healthful, but rather its consumption causes increased risk of CHD, stroke, and other morbidity.

96.     Plaintiff lost money as a result of the deceptive claims and practices in that he did not receive what he paid for when purchasing the Product.

97.     Plaintiff detrimentally altered his position and suffered damages due to the challenged claims.

98.     Plaintiff continues to regularly shop at stores where the Product is sold and continues to encounter it when he shops.

99.     Without prospective injunctive relief requiring Defendant to label the Product in a truthful manner, Plaintiff and other consumers will be unable to determine whether a future label bearing the challenged claims or similar claims conveying the Product is healthful or won't detriment health are valid because the Product has been reformulated and improved, or whether Defendant has simply continued or resumed its misleading behavior. Thus, he and Class Members will be unable to decide how best to spend their money.

100.    If Defendant were to be enjoined from making the false and misleading claims, the market price or demand for Silk Coconutmilk would drop. While Plaintiff would not use the Product on a regular basis, if it did not bear the false and misleading claims and he would not have to pay the premium associated with those claims Plaintiff would consider purchasing the Product again and use it in limited amounts on special occasions, for example, when a recipe specifically calls for coconut milk.

101.    The continued use of the challenged claims on the Product's labeling threatens to repeatedly infringe upon the substantive right California's consumer protection statutes give Plaintiff to be free from fraud in the marketplace.

102.    Even aware of Danone's misleading labeling, Plaintiff's substantive rights continue to be violated every time Plaintiff is exposed to the Product's misleading labeling.

103.    Danone's senior officers and directors allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## CLASS ACTION ALLEGATIONS

104.    While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in California who, at any time from February 26, 2015[47] to the

---

[47] Plaintiff provided Defendant a two week extension to respond to his notice letter, during which Defendant agreed the statute of limitations would be tolled.

time a class is notified (the "Class Period"), purchased Silk Coconutmilk for personal or household use, and not for resale or distribution (the "Class").

105.   The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

106.   Questions of law and fact common to Plaintiff and the Class include:

    a.    whether Danone communicated a message regarding healthfulness of the Product and its impact on cholesterol levels and cardiovascular health through its packaging and advertising;

    b.    whether that message was material, or likely to be material, to a reasonable consumer;

    c.    whether the challenged claims are false, misleading, or reasonably likely to deceive a reasonable consumer;

    d.    whether Danone's conduct violates public policy;

    e.    whether Danone's conduct violates state or federal food statutes or regulations;

    f.    the proper amount of damages, including punitive damages;

    g.    the proper amount of restitution;

    h.    the proper scope of injunctive relief; and

    i.    the proper amount of attorneys' fees.

107.   These common questions of law and fact predominate over questions that affect only individual Class Members.

108.   Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Danone's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product, and suffered economic injury because the Product is misrepresented. Absent Danone's business practice of deceptively and

unlawfully labeling the Product, Plaintiff and Class Members would not have purchased the Product.

109.   Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods.

110.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

111.   Danone has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

112.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

113.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

114.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

115.   The acts, omissions, misrepresentations, practices, and non-disclosures of Danone as alleged herein constitute business acts and practices.

### Fraudulent

116.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying an objective reasonable consumer test.

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT

117.   As set forth herein, Danone's claims relating to Silk Coconutmilk are likely to deceive reasonable consumers and the public.

**Unlawful**

118.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

      a.   The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

      b.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

      c.   The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

      d.   The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.*

**Unfair**

119.   Danone's conduct with respect to the labeling, advertising, and sale of Silk Coconutmilk was unfair because Danone's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

120.   Danone's conduct with respect to the labeling, advertising, and sale of Silk Coconutmilk was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

121.   Danone's conduct with respect to the labeling, advertising, and sale of Silk Coconutmilk was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in sales and profits obtained by Danone through the misleading labeling and advertising does not outweigh the harm to Class Members who were deceived into purchasing Silk Coconutmilk believing it was healthful when in fact it detriments health.

122.   Danone profited from the sale of the falsely, deceptively, and unlawfully advertised Silk Coconutmilk to unwary consumers.

123.   Plaintiff and Class Members are likely to continue to be damaged by Danone's deceptive trade practices, because Danone continues to disseminate misleading information. Thus, injunctive relief enjoining Danone's deceptive practices is proper.

124.   Danone's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Danone's unlawful conduct.

125.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Danone from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

126.   Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Product, which was unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

127.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

128.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

129.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

130.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Danone relating to Silk Coconutmilk misled consumers acting reasonably as to the healthfulness of the Product.

131.   Plaintiff suffered injury in fact as a result of Danone's actions as set forth herein because Plaintiff purchased Silk Coconutmilk in reliance on Danone's false and misleading marketing claims stating or suggesting that the Product, among other things, is healthful and would not detriment health.

132.   Danone's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Danone has advertised Silk Coconutmilk in a manner that is untrue and misleading, which Danone knew or reasonably should have known, and omitted material information from the Product's labeling and advertising.

133.   Danone profited from the sale of the falsely and deceptively advertised Product to unwary consumers.

134.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Danone was unjustly enriched.

135.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Danone from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

### THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

136.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

137.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

138.   Danone's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Silk Coconutmilk for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

139.   Danone profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

140.   As a result, Plaintiff and the Class have suffered harm, and therefore seek (a) actual damages in the maximum amount permitted by law, including the amount of the total retail sales price of Silk Coconutmilk sold throughout the Class Period to all Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, (d) restitution, and (e) attorneys' fees and costs.

141.   Danone's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

142.   Pursuant to California Civil Code § 1782, on or around January 15, 2019, Plaintiff sent written notice of his claims and Danone's particular violations of the Act to

Danone by certified mail, return receipt requested. Because Danone failed to implement the demanded remedial measures, Plaintiff on behalf of himself and the Class, seeks actual and punitive damages, including attorneys' fees.

143.   Plaintiff, on behalf of himself and the Class, seeks restitution and  injunctive relief under Civil Code § 1782(d).

144.   In compliance with Cal. Civ. Code § 1780(d), Plaintiff's affidavit of venue is being filed concurrently herewith.

**FOURTH CAUSE OF ACTION**

**Breaches of Express Warranties,**

**Cal. Com. Code § 2313(1)**

145.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

146.   Through the following claims on the Product's labeling, Danone made affirmations of fact or promises, or description of goods through the following labeling statements:

    a.    "free of . . . cholesterol";

    b.    "cholesterol-free"; and

    c.    "Free from Cholesterol"

147.   These and other representations were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

148.   Danone breached its express warranties by selling a Product that negatively affects cholesterol levels, increasing risk of CHD, stroke, and other morbidity.

149.   That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class Members paid for the Product.

150.   As a result, Plaintiff seeks, on behalf of himself and the Class, actual damages arising as a result of Danone's breaches of express warranty.

*Marshall v. Danone US, Inc.*

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability,

### Cal. Com. Code § 2314

151.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

152.   Danone, through its acts set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class through the following labeling promises:

        a.   "free of . . . cholesterol";

        b.   "cholesterol-free"; and

        c.   "Free from Cholesterol".

153.   Danone is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

154.   However, Danone breached that implied warranty in that the Product negatively affects cholesterol levels, increasing among other things risk of CHD and stroke, as set forth in detail herein.

155.   As an actual and proximate result of Danone's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Danone to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

156.   Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase price.

### **PRAYER FOR RELIEF**

157.   Wherefore, Plaintiff, on behalf of himself, all others similarly situated and the general public, prays for judgment against Danone as to each and every cause of action, and the following remedies:

a.      An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing undersigned counsel as class counsel;

b.      An Order requiring Danone to bear the cost of class notice;

c.      An Order compelling Danone to conduct a corrective advertising campaign;

d.      An Order compelling Danone to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

e.      An Order requiring Danone to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

f.      An Order requiring Danone to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

g.      An Order requiring Danone to pay compensatory damages and punitive damages as permitted by law;

h.      An award of attorneys' fees and costs; and

i.      Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

158.   Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: March 12, 2019              /s/ Paul K. Joseph
                                   **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
                                   PAUL K. JOSEPH
                                   *paul@pauljosephlaw.com*
                                   4125 W. Point Loma Blvd., No. 309
                                   San Diego, CA 92110
                                   Phone: (619) 767-0356
                                   Fax: (619) 331-2943

                                   ***Counsel for Plaintiff and the Proposed Class***

*Marshall v. Danone US, Inc.*
CLASS ACTION COMPLAINT